·THE STATE, STEPHEN H. CONGER ET AL., PROSECUTORS, v. THE INHABITANTS OF THE TOWNSHIP OF SUMMIT, IN THE COUNTY OF UNION.

1. The township committee of the township of Summit had power under the act of April 2d, 1888 (*Pamph. L.,* p. 366), to make a contract for supplying the township with water.
2. The acts of May 9th, 1884, and April 17th, 1884, invest the township committee with the charge or control of the water supply for the township. *Rev. Sup.,* p. 654, *pl.* 723, and *p.* 655, *pl.* 725.
3. The fact that the water supply is not carried to every part of the township does not invalidate the contract.

On *certiorari.*

Argued at February Term, 1890, before Justices DEPUE ·and VAN SYCKEL.

For the plaintiffs, *Wm. Cranstoun* and *Abel I. Smith.*

For the defendants, *John R. Emery* and *John W. Taylor.*

The opinion of the court was delivered by

VAN SYCKEL, J.   The contention in this case relates to the validity of a contract for the supply of water made by the township committee of the township of Summit, on behalf of the township, with the Commonwealth Water Company.

The writ is prosecuted by taxpayers of the township. The water company is not a party to the suit, but has been notified of its pendency and was represented by counsel on the argument of the cause.

The reason chiefly relied on by the relators is the alleged want of power of the township committee to make a contract for water supply.

The act of April 2d, 1888, entitled "An act to authorize any of the municipal corporations of this state to contract for a supply or a further or other supply of water therefor," provides, "that it shall be lawful for the board of aldermen, common council, city council, aqueduct board, board of public works, water commissioners, township committee, town committee, or other board, body or department of any municipal corporation in this state, having the charge or control of the water supply of any such municipal corporation, to make and enter into a contract or agreement with any water company or other company, contractor or contractors, for one year or for a term of years, for the obtaining and furnishing of a supply or a further or other supply of water to such municipal corporation for the purpose of extinguishing fires, and for such other lawful uses and purposes as may be deemed necessary or convenient; and any such contract and agreement, when so made, shall be the valid and lawful contract of such municipal corporation as well as of any such water company or other company, contractor or contractors, according to the tenor thereof," &c.   *Pamph. L.* 1888, *p.* 366.

The defendants claim that the words in this act, "having the charge or control of the water supply," qualify only the clause, "or other board, body or department."

The relators insist that the words are descriptive of each public body in said act named to which the benefit of said

legislation is extended, and that therefore the town committee of Summit are not within the act, because it does not appear that the said committee is invested with the control of the water supply for the township.

Upon reference to previous legislation, it appears to be immaterial whether the former or the latter interpretation is adopted.

The act of May 9th, 1884 (*Rev. Sup., p.* 654, *pl.* 723), gives every township committee power " to enter into and make a contract with any aqueduct board or water company, for a term not exceeding ten years, for the obtaining and furnishing of a supply of water to be used by and within the township for the purpose of extinguishing fires, and for such other public uses and purposes as may be found necessary or convenient." This was an act amendatory of the act of 1881 (*p.* 118), by which that act was amended by re-enacting the first section, leaving out the word " existing," thereby giving authority to contract with any aqueduct board or water company, whether existing at the date of the first act or not.

The supplement of April 17th, 1884 (*Rev. Sup., p.* 655, *pl.* 725), bestows upon the township power to supply the inhabitants thereof with water upon such terms as may be agreed upon.

The title of the act of 1888 shows that it was intended to apply not only to municipalities which had a supply of water, but also to those which had no supply by means of water works. It must be held, therefore, that within the meaning of the act of 1888, the town committee of Summit had, by virtue of the acts of 1884, charge or control of the water supply for the township, and that they were authorized to enter into a contract in pursuance of the act of 1888.

That act extends the term for which a contract may be made to twenty-five years.

*Secondly.* The contract is alleged to be infirm in the provision giving to the water company the right to lay its pipes through the public highways.

The first section of the act of 1876, as amended by the act of March 5th, 1884 (*Rev. Sup., p.* 653, *pl.* 720), authorizes the formation of water companies for constructing water works in any city, town, township, village or seaside resort in this state having a population of not more than fifteen thousand nor less than five hundred inhabitants.

It appears that the township of Summit has about four thousand inhabitants.

Section 12 of the act of 1876 (*Rev. Sup., p.* 652, *pl.* 716) gives such water company power to lay its pipes in the highways, provided that the consent shall be obtained of the corporate authorities, if any there be, of any town through which the same may be laid.

There are no corporate authorities in the township of Summit, unless the town committee be regarded as such, and therefore the consent of such committee is all that can be required.

But if the water company is without the power to lay its pipes in the public ways, it is not conceded that the prosecutors can litigate that question in this cause. The individual whose property is invaded without authority can obtain redress in another proceeding.

*Thirdly.* The order given by the town committee to the assessor of the township, to levy a tax of $2,500 for water, is alleged to be illegal and void, on the ground that the committee can direct the expenditure of money raised for township purposes, but cannot direct a tax to be raised or bind the township to pay it.

The levy was ordered for the purpose of meeting the payments specified in the contract, and was within the authority expressly granted by the act of 1888.

*Fourthly.* The relators complain that at the present time a supply of water will be carried to only a portion of the territory of the township, while the cost of obtaining it will be assessed upon all the taxpayers of the township.

. This objection was considered in *Van Giesen* v. *Bloomfield,* 18 *Vroom* 442, 448, to be without substance.

Carried to its logical result, no general tax could be supported until the water was supplied at the door of every taxpayer in the township.

Many persons are compelled to contribute to road taxes who have not even a convenient way of reaching any public highway. School taxes are imposed upon those who have no children to educate, and other burdens may fall with apparent inequality, but these are incidents unavoidable in the conduct of government.

In the case before us, however, the unfairness is apparent rather than real. All the lands in the township to which the water supply is furnished will be thereby considerably enhanced in value.

If, therefore, the assessor does his duty in making his valuations for the purpose of assessment, such lands will be required to contribute a larger proportion of the taxes raised than they otherwise would, and, consequently, the burdens of the relators and those who stand with them will not be measurably increased.

The contract does not exclude any portion of the township from its benefits; on the contrary, it expressly provides for the extension of the distributing pipes from time to time as the demand will justify the expense of it.

In my opinion, the proceedings of the town committee should be affirmed and the writ dismissed, with costs.